UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JUDY G. BAGHERI, Individually and on Behalf of All Others Similarly Situated, | § § § | Civil Action No. 3:17-CV-01892 |
| | § | <u>CLASS ACTION</u> |
| Plaintiff, | § § | |
| vs. | § § | |
| | § | |
| FELCOR LODGING TRUST INCORPORATED, FELCOR LODGING LIMITED PARTNERSHIP, THOMAS J. CORCORAN, JR., STEVEN R. GOLDMAN, CHRISTOPHER J. HARTUNG, MARK D. ROZELLS, GLENN A. CARLIN, ROBERT F. COTTER, PATRICIA L. GIBSON, DANA K. HAMILTON, CHARLES A. LEDSINGER, ROBERT H. LUTZ, JR., RLJ LODGING TRUST, RLJ LODGING TRUST, L.P., RANGERS SUB I, LLC and RANGERS SUB II, LP, | § § § § § § § § § § § § § § § | |
| Defendants. | § § § | |
| | § | <u>DEMAND FOR JURY TRIAL</u> |

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF
§§14(a) AND 20(a) OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff Judy G. Bagheri ("plaintiff"), by and through the undersigned counsel, brings this Class Action Complaint for Violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 against the herein-named defendants, and upon information and belief, based upon, *inter alia*, the investigation of counsel, plaintiff alleges as follows:

**NATURE OF THE ACTION**

1.     Plaintiff brings this direct shareholder class action individually and on behalf of a class (the "Class") of public shareholders of FelCor Lodging Trust Incorporated ("FelCor" or the "Company"), against FelCor, the members of its Board of Directors (the "Board"), FelCor Lodging Limited Partnership, RLJ Lodging Trust ("RLJ"), RLJ Lodging Trust, L.P., Rangers Sub I, LLC and

Rangers Sub II, LP (collectively, "defendants"), for violations of §§14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. §§78n(a) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9 promulgated thereunder, 17 C.F.R. §240.14a-9, arising out of defendants' dissemination of a materially false and misleading proxy statement in connection with the proposed sale of FelCor to RLJ announced on April 24, 2017 (the "Proposed Transaction").

2.     FelCor is a Maryland real estate investment trust ("REIT") headquartered in Irving, Texas. The Company owns a diversified portfolio of primarily upscale and luxury hotels located in major markets and resort locations throughout the United States.

3.     On April 24, 2017, FelCor and RLJ issued a joint press release announcing they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which RLJ will acquire FelCor, and FelCor shareholders will receive 0.362 shares of RLJ common stock for each share of FelCor common stock they own (the "Merger Consideration").

4.     The Merger Consideration significantly undervalues FelCor, as it fails to account for the Company's intrinsic value and projected growth potential. Based on RLJ's stock price on April 21, 2017, the last trading day before defendants announced the Proposed Transaction, the Merger Consideration represents a value to FelCor shareholders of only $8.40 per share. But FelCor's stock price traded at $8.12 per share as early as January 26, 2017 – just three months before defendants announced the deal – and FelCor management has projected significant growth for the Company.

5.     To be sure, in September 13, 2016, FelCor management made a presentation to investors that revealed a redevelopment and repositioning project expected to yield projected 5-year stabilized EBITDA growth for the Company *of at least $25 to $32 million*, with potentially even more upside. This projected growth did not include any additional growth that would potentially result from other operational enhancements, such as RevPAR growth, and other cost-cutting initiatives. Moreover, since the value of the Merger Consideration is tied to the value of RLJ's

stock, and defendants failed to negotiate and secure a "collar" in favor of FelCor's shareholders, the value implied by the Merger Consideration can freely decrease, and, in fact, has decreased since the announcement of the Proposed Transaction. As of July 5, 2017, the Merger Consideration represents a value of ***only $7.20 per share*** – a sharp discount to FelCor's $7.32 per share stock price on April 21, 2017, the day before defendants announced the Proposed Transaction.

6.      Defendants then locked up the deal in favor of RLJ and deterred topping bidders for the Company with preclusive lock-up provisions in the Merger Agreement, including a strict "no solicitation" provision, rapid information rights regarding sensitive bidder-specific information, deal-matching rights, and a termination fee and expense reimbursement potentially amounting to $59 million (the "Lockup Provisions"), which any topping bidder would have to absorb in order to purchase the Company – forcing any potential topping bidder to negotiate from the position of a financial deficit. The preclusive effect of the Lockup Provisions was demonstrated when, on May 3, 2017, after defendants announced the Proposed Transaction, a competing bidder that was positioning itself for a hostile takeover of FelCor with a public offer representing $8.25 per share in value, including a $4.13 cash component, and a threat to replace the members of the Board, was forced to publicly withdraw its bid after it determined "there is no cost-effective, actionable path forward toward an agreement."

7.      On June 2, 2017, following substantial review, editing and ultimate approval by each member of the Board and RLJ, defendants filed with the SEC a joint proxy statement/prospectus and registration statement on Form S-4 (the "Joint Proxy") to solicit shareholder approval of the Proposed Transaction. As detailed below, the Joint Proxy omits material information that renders statements made in the Joint Proxy misleading, in direct contravention of §§14(a) and 20(a) of the 1934 Act.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331 and §27 of the 1934 Act, 15 U.S.C. §78aa, because the claims asserted herein arise under §§14(a) and 20(a) of the 1934 Act, 15 U.S.C. §78n(a) and §78t(a).  Venue is proper in this District pursuant to §27 of the 1934 Act and 28 U.S.C. §1391(b).

9.     This Court has personal jurisdiction over each defendant named herein because each defendant is an individual, corporation, or partnership that has sufficient minimum contacts with this District, including by virtue of their direct involvement in negotiations surrounding the Proposed Transaction, which occurred in this District, so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

## PARTIES

**Plaintiff**

10.     As detailed in the certification filed herewith, which is incorporated herein by reference, at all relevant times, plaintiff Judy G. Bagheri was a holder of FelCor common stock.

**The FelCor Defendants**

11.     Defendant FelCor is a Maryland corporation operating as a REIT with corporate headquarters located at 125 E. John Carpenter Freeway, Suite 1600, Irving, Texas.  FelCor's common stock trades on the New York Stock Exchange ("NYSE") under the ticker symbol "FCH."

12.     Defendant FelCor Lodging Limited Partnership is a Delaware limited partnership. FelCor is the sole general partner and the owner of over 99% of the partnership interest in FelCor Lodging Limited Partnership, through which FelCor conducts its operations.  As the sole general partner, FelCor has exclusive and complete control of FelCor Lodging Limited Partnership.

13.     Defendants FelCor and FelCor Lodging Limited Partnership are collectively referred to herein as "FelCor."

**The Individual Defendants**

14.     Defendant Thomas J. Corcoran, Jr. ("Corcoran") is, and at all relevant times was, Chairman of the Board of FelCor.  He previously served as President and Chief Executive Officer ("CEO") of FelCor from the Company's formation in 1994 until February 2006 when he became the non-executive Chairman of the Board.

15.     Defendant Steven R. Goldman ("Goldman") is a member of the Board and the current CEO of FelCor.  Goldman was appointed to the position of CEO on February 10, 2017.

16.     Defendant Christopher J. Hartung ("Hartung") is, and at all relevant times was, a member of the Board.

17.     Defendant Mark D. Rozells ("Rozells") is, and at all relevant times was, a member of the Board.

18.     Defendant Glenn A. Carlin ("Carlin") is, and at all relevant times was, a member of the Board.

19.     Defendant Robert F. Cotter is, and at all relevant times was, a member of the Board.

20.     Defendant Patricia L. Gibson is, and at all relevant times was, a member of the Board.

21.     Defendant Dana K. Hamilton is, and at all relevant times was, a member of the Board.

22.     Defendant Charles A. Ledsinger ("Ledsinger") is, and at all relevant times was, a member of the Board.

23.     Defendant Robert H. Lutz, Jr. is, and at all relevant times was, a member of the Board.

24.     The defendants identified in ¶¶14-23, above, are at times collectively referred to herein as the "Board" or the "Individual Defendants."

**The RLJ Defendants**

25.     Defendant RLJ is a Maryland REIT with corporate headquarters located at 3 Bethesda Metro Center, Suite 1000, Bethesda, Maryland.  RLJ's common stock trades on the NYSE under the ticker symbol "RLJ."

26.     Defendant RLJ Lodging Trust, L.P. is a Delaware limited partnership in control of subsidiaries that conduct all of RLJ's business, hold substantially all of RLJ's assets and liabilities, and generate substantially all of RLJ's revenues.  RLJ is the sole general partner of RLJ Lodging Trust, L.P. and, as of March 31, 2017, owned approximately 99.6% of the outstanding Operating Partnership Common Units in RLJ Lodging Trust, L.P.

27.     Defendant Rangers Sub I, LLC is a Maryland limited liability company and a wholly owned subsidiary of RLJ Lodging Trust, L.P., formed solely for the purposes of effecting the Proposed Transaction.

28.     Defendant Rangers Sub II, LP is a Delaware limited partnership and an indirect wholly owned subsidiary of RLJ Lodging Trust, L.P., formed solely for the purposes of effecting the Proposed Transaction.

29.     Defendants RLJ, RLJ Lodging Trust, L.P., Rangers Sub I, LLC and Rangers Sub II, LP, are collectively referred to herein as "RLJ."

## SUBSTANTIVE ALLEGATIONS

**Background of the Proposed Transaction**

30.     FelCor is a Maryland corporation operating as a REIT that owns a diversified portfolio of primarily upscale and luxury hotels located in major markets and resort locations throughout the United States.  FelCor is the sole general partner of and the owner of a greater than 99% partnership interest in FelCor Lodging Limited Partnership, the entity through which FelCor owns hotels and conducts business operations.

31.     On September 13, 2016, FelCor made an investor presentation where it revealed its plan to undertake a redevelopment and repositioning project expected to yield stabilized EBITDA growth of at least $25 to $32 million, with potentially even more upside.

32.     On September 19, 2016, representatives of Ashford Hospitality Trust ("AHT"), as well as its external advisor, Ashford Inc. ("AINC"), requested a lunch meeting with Corcoran, FelCor's Chairman of the Board, to propose a merger between FelCor and AHT, which was held on September 20, 2016.

33.     On November 13, 2016, Corcoran met with a representative of RLJ to determine whether RLJ might have an interest in a transaction with FelCor.  On November 14, 2016, an RLJ representative confirmed that RLJ would be interested in exploring a potential transaction with FelCor.

34.     On November 16, 2016, Hartung and Rozells, directors of FelCor, met with representatives of AHT at the National Association of Real Estate Investment Trusts conference to discuss a potential transaction.  During the meeting, AHT delivered a presentation in which it proposed $8.00 per share for FelCor common stock in a fixed-ratio all-stock transaction.

35.     On December 13, 2016, AHT sent a letter to Hartung regarding AHT's proposal to engage in a transaction with FelCor, which set forth certain benefits of the potential transaction and included an indicative merger consideration of $9.31 per share payable in AHT shares.

36.     On December 18, 2016, the FelCor Board met telephonically and authorized the creation of a transaction committee comprised of Hartung and directors Carlin and Ledsinger (the "FelCor Transaction Committee"), which was purportedly formed to respond to the proposal from AHT, as well as to interest from other parties, including RLJ.

37.     On December 20, 2016, FelCor provided a draft nondisclosure agreement to RLJ. The following day, FelCor delivered to AHT a draft confidentiality agreement that included a

standstill provision.  AHT responded that it would not agree to a standstill provision that restricted its ability to present its proposal directly to FelCor's stockholders.  On December 28, 2016, FelCor and RLJ entered into a nondisclosure agreement that included mutual standstill provisions.

38.     On December 29, 2016, an AHT representative called Hartung to discuss AHT's proposal, entering into a nondisclosure agreement with a standstill provision, and extending the deadline for nominating directors for election to the FelCor Board.  During this call, AHT indicated it had acquired a position in FelCor's shares.

39.     On January 11, 2017, AHT and FelCor entered into a nondisclosure agreement, which included a limited standstill provision expiring on February 9, 2017.

40.     On January 16, 2017, AHT sent a letter to Hartung that reiterated AHT's desire to pursue a potential transaction on a friendly basis.

41.     On January 24, 2017, Hartung sent a letter to AHT stating that the FelCor Board had concluded that AHT's current proposal was not in the best interest of FelCor stockholders.

42.     On January 31, 2017, RLJ informed FelCor that RLJ was prepared to pursue a transaction with FelCor at an implied share value of FelCor common stock in the low $8.00 range. Representatives of FelCor advised that this price range would likely be insufficient to warrant exploration by the FelCor Board.

43.     On February 1, 2017, AHT advised that it intended to propose seven independent candidates for election to the FelCor Board.

44.     On February 2, 2017, AHT sent a letter to Hartung that reiterated AHT's belief that FelCor's stockholders would benefit from a potential transaction with AHT and presented a revised proposal for the acquisition of FelCor.  The Joint Proxy, however, does not disclose the details of AHT's revised proposal, even though it disclosed details of AHT's previous proposals.

45.     On February 3, 2017, the FelCor Transaction Committee met telephonically with members of FelCor management and the Board's financial advisor, Merrill Lynch, Pierce, Fenner & Smith Incorporated ("BofA Merrill Lynch"), also in attendance.  BofA Merrill Lynch presented preliminary financial analyses with respect to FelCor and certain of the then-proposed transactions.

46.     On February 8, 2017, Hartung sent a letter to AHT indicating that FelCor was not prepared to engage in transaction discussions with AHT based on AHT's February 2, 2017 letter.

47.     On February 9, 2017, RLJ and its representatives verbally communicated to FelCor and its representatives, based on the preliminary due diligence review through that date, that RLJ was prepared to explore a stock-for-stock merger in which FelCor shareholders would receive 0.363 RLJ common shares for each share of FelCor common stock.  Based on the $23.15 per share closing price of RLJ common shares on February 8, 2017, RLJ's proposal had a value, at that moment in time, of approximately $8.40 per share of FelCor common stock.

48.     On February 17, 2017, BofA Merrill Lynch delivered a memorandum to the FelCor Board disclosing certain relationships between BofA Merrill Lynch and its affiliates, on the one hand, and FelCor, RLJ and AHT and certain of their affiliates, on the other hand, during the prior two years.

49.     On February 21, 2017, AHT sent a letter to Hartung with a proposal to acquire all of the outstanding FelCor shares for $9.27 per share, based on the closing prices of AHT and AINC common stock as of February 17, 2017, comprising a fixed exchange ratio of 1.192 shares of AHT, 0.003 shares of AINC (then owned by AHT) and 0.001 warrants to purchase AINC shares in exchange for each share of FelCor common stock.

50.     On February 27, 2017, Goldman sent a letter to AHT stating that FelCor was prepared to engage with AHT if it was willing to consider making an all-cash or substantially all-cash proposal, even though FelCor was in negotiations with RLJ for a stock-for-stock deal only.  In

addition, Goldman confirmed that FelCor was willing to provide additional information, including property level information, to AHT provided AHT also shared reciprocal property level information with FelCor.  Goldman also spoke with an AHT representative by telephone.  The parties agreed to share additional diligence materials and maintain open communication.

51.     On March 3, 2017, Goldman and FelCor's representatives indicated to RLJ and its representatives that it would be necessary for RLJ to increase its proposed exchange ratio before Goldman could recommend the potential transaction to the FelCor Board.

52.     On March 9, 2017, RLJ and its representatives proposed to FelCor and its representatives a best and final exchange ratio of 0.368 RLJ common shares for each share of FelCor common stock.  Goldman responded that he would report this offer to the FelCor Transaction Committee and recommend that both sides work toward consummating a transaction and commencing confirmatory due diligence.

53.     On March 13, 2017, RLJ provided FelCor with a draft term sheet outlining terms for a business combination between the companies.  The term sheet provided for a stock-for-stock merger at an exchange ratio of 0.368 RLJ common shares for each share of FelCor common stock.  Based on the $22.55 per share closing price of RLJ common shares on March 14, 2017, RLJ's proposal had a value of approximately $8.30 per share of FelCor common stock.

54.     On March 25, 2017, an AHT representative sent a letter to Goldman that contained a revised proposal to acquire all outstanding FelCor shares.  The proposal was restructured to include a cash component of up to approximately $213 million, representing 21% of the total consideration based on the closing stock price of AHT and AINC common stock as of March 24, 2017, comprising $1.53 in cash, a fixed exchange ratio of 0.930 shares of AHT, 0.003 shares of AINC and 0.001 warrants to purchase AINC shares.  Based on the closing prices of AHT and AINC common stock as of March 24, 2017, the last trading day before the revised proposal was made, the value of the

revised AHT March 25, 2017 proposal would be approximately $8.80 per share of FelCor common stock.

55.     On April 10, 2017, AHT filed a preliminary proxy statement with the SEC seeking support for the election of seven new candidates to the FelCor Board.

56.     On April 17, 2017, RLJ proposed a reduced exchange ratio of 0.362 RLJ common shares for each share of FelCor common stock.

57.     On April 20, 2017, AHT delivered a letter proposing to acquire FelCor for total consideration with an implied value of $8.25 per share, comprising $4.13 in cash, 0.608 shares of AHT common stock, 0.003 shares of AINC common stock and 0.001 warrants to purchase AINC common stock with a strike price of $100 per share.

58.     On April 21, 2017, BofA Merrill Lynch delivered an updated memorandum to the FelCor Board disclosing certain relationships between BofA Merrill Lynch and its affiliates, on the one hand, and FelCor, RLJ and AHT and certain of their affiliates, on the other hand, during the prior two calendar years as well as the first quarter of 2017.

59.     Also on April 21, 2017, the FelCor Board met and determined that the AHT proposal would not be in the best interests of FelCor and its stockholders.

60.     During the evening of April 23, 2017, the FelCor Board met to review the terms and conditions of the proposed transaction with RLJ.  Representatives of BofA Merrill Lynch reviewed their presentation regarding the financial aspects of RLJ's offer of 0.362 RLJ common shares for each share of FelCor common stock, which had been revised to reflect closing stock prices from April 21, 2017.  Following additional discussion by the FelCor Board, representatives of BofA Merrill Lynch provided to the FelCor Board BofA Merrill Lynch's oral opinion, subsequently confirmed by a written opinion, that the Merger Consideration was fair to FelCor shareholders.  The Board then unanimously approved the Merger Agreement.

61.     FelCor and RLJ executed the Merger Agreement the night of April 23, 2017 and, on April 24, 2017, issued a joint press release announcing that FelCor and RLJ had entered into the Merger Agreement, pursuant to which FelCor will merge with and into a wholly owned subsidiary of RLJ in an all-stock transaction with FelCor shareholders receiving 0.362 shares of newly issued RLJ common stock and owning only 29% of the combined company combined company:

**RLJ Lodging Trust and FelCor Lodging Trust to Merge
Creating $7 Billion Leading Lodging REIT**

*        *        *

RLJ Lodging Trust ("RLJ") (RLJ) and FelCor Lodging Trust Incorporated ("FelCor") (FCH) today announced that they have entered into a definitive merger agreement (the "Merger Agreement") under which FelCor will merge with and into a wholly-owned subsidiary of RLJ in an all-stock transaction. Post-merger, RLJ is expected to have a pro forma equity market capitalization of approximately $4.2 billion and a total enterprise value of $7 billion, creating the largest pure-play public REIT dedicated to owning focused-service and compact full-service hotels.

The merger will establish the third biggest pure-play lodging REIT by enterprise value, creating meaningful scale to capitalize on cost efficiencies, negotiate leverage and access to capital, and the opportunity to strategically recycle assets and optimize the portfolio. The combined company will have ownership interests in 160 hotels, including premium-branded hotels located primarily in urban and coastal markets with multiple demand generators. The combination also provides significant penetration within key high-growth markets and broad geographic and brand diversity. With a strong and flexible balance sheet and disciplined approach to portfolio and asset management, the combined company will have the attributes and capabilities to drive accretive growth and to pursue additional opportunities to enhance value.

Robert L. Johnson, Executive Chairman of RLJ Lodging Trust, stated, "As Chairman of RLJ Lodging Trust, I would like to say that we are very excited about this combination with FelCor. I am confident that, under the management of our seasoned team of executives, this portfolio will yield significant benefits to the shareholders of both companies."

"We are truly excited about this unique opportunity as we transform our two companies into one of the largest pure-play lodging REITs. Combining these two complementary portfolios creates a best-in-class platform that is well positioned to deliver long-term growth and generate significant shareholder value," commented Ross H. Bierkan, RLJ's President and Chief Executive Officer. "In addition to being immediately accretive to our RevPAR, merging with FelCor expands our geographic footprint in highly-desirable markets on the West Coast, while strengthening our presence in other coastal markets in the East and the South. RLJ's enhanced scale

post-merger is expected to generate both corporate- and property-level operating cost benefits and market leverage opportunities, which will drive shareholder value over time."

Steven R. Goldman, FelCor's Chief Executive Officer, stated, "We are very pleased to combine with RLJ Lodging Trust to create a leading lodging REIT that is positioned for significant long-term growth. This merger creates a company that has greater reach in key markets with a streamlined operating structure and more advantageous cost of capital. FelCor shareholders are receiving an attractive valuation for the company's hotel assets and have the opportunity to benefit from a highly respected management team with a history of value creation."

**Transaction Terms**

Under the terms of the Merger Agreement, each share of FelCor common stock will be converted into 0.362 shares of newly issued common shares of RLJ common stock in a taxable merger.  FelCor's operating units will be exchanged for limited partnership units in RLJ's operating partnership at a similar exchange ratio of 0.362. Following the merger, RLJ's shareholders are expected to own approximately 71 percent of the combined company's fully diluted equity, and FelCor's shareholders are expected to own the remaining 29 percent.

This strategic merger was unanimously approved by the Boards of both companies. Once the merger is consummated, the company will retain the RLJ Lodging Trust name and will trade under the ticker symbol "RLJ" (NYSE).

**Summary of Strategic Benefits**

Merging RLJ and FelCor positions the combined company to enhance shareholder value as an industry leader among lodging REITs, with the following highlights:

- **Combination creates the third largest pure-play lodging REIT with a combined enterprise value of $7 billion**

    - Increased shareholder liquidity and cost of capital efficiencies

    - Stock transaction allows both sets of shareholders to participate in the upside

    - Enhanced positioning with brands and operators

- **Leading upscale portfolio of compact full-service and premium focused-service hotels generating strong operating margins**

    - Combined portfolio will include 160 hotels in 26 states and the District of Columbia, diversified across Marriott, Hilton, Hyatt and Wyndham flags

- Broad geographic diversity and strengthened presence in key markets such as California, Florida and Boston

- **Positive financial impact and positioning for future value creation**

  - Accretive in first full year

  - Expected cash G&A expense savings of approximately $12 million and approximately $10 million of potential savings from stock-based compensation expense and capitalized cash G&A

  - Opportunity for additional ongoing operating and cash flow improvements through greater purchasing power, market leverage and capital expenditure efficiencies

- **Future opportunities to unlock value from portfolio repositioning**

  - Potential conversion and redevelopment opportunities

  - Opportunity to actively refine portfolio

- **Strong and flexible balance sheet**

  - Significant liquidity, minimal near-term maturities and opportunity to lower cost of capital

## Pro Forma Operations and Balance Sheet

The combined entity will have 31,467 rooms across 160 hotels. The merger will be immediately accretive to RLJ's RevPAR with Pro forma 2016 RevPAR increasing 5.4% to $137.

The merger of RLJ and FelCor will produce significant economies of scale, including approximately $22 million of expected savings from the elimination of duplicative corporate general and administrative costs. The combined company is also expected to benefit from long-term, property level savings in the areas of energy/utility contracts, insurance and furniture, fixture and equipment (FF&E) procurement. Finally, the merger will augment RLJ's human capital by adding a number of talented FelCor professionals to the RLJ team.

The combined entity will have significant financial strength and flexibility, including approximately $700 million of available liquidity, which includes approximately $400 million of an undrawn credit facility. The combined entity's projected Pro forma Net Debt to EBITDA ratio during the first full-year of operations is expected to be less than 4.5x (or less than 5.0x including convertible perpetual preferred equity) and is expected to improve each year thereafter.

## Leadership and Organization

The combined company will continue to be led by Robert L. Johnson as Executive Chairman, Ross H. Bierkan as President and Chief Executive Officer, and Leslie D. Hale as Chief Operating Officer and Chief Financial Officer. Upon completion, the company's headquarters will remain in Bethesda, Maryland. The number of Trustees on RLJ's Board will be increased to eight, with one existing FelCor director mutually acceptable to FelCor and RLJ being appointed to the RLJ Board upon closing.

**Dividend Policy and Declaration**

Both RLJ and FelCor are expected to continue to follow their respective dividend policies until the closing of the merger. Following the closing of the transaction, the new company expects to pay a quarterly dividend of $0.33 per common share of beneficial interest, consistent with RLJ's current dividend policy. Any post-merger dividends are subject to the approval of RLJ's Board.

**Closing of the Transaction**

A joint proxy statement/prospectus will be filed with the Securities and Exchange Commission and, following its effectiveness, will be mailed to the shareholders of both companies. The transaction is expected to close by the end of 2017. The merger is subject to customary closing conditions, including the approval of both RLJ and FelCor shareholders.

**Advisors**

Barclays is acting as the financial advisor to RLJ and Hogan Lovells and Arent Fox are serving as legal advisors. BofA Merrill Lynch is acting as the financial advisor to FelCor, and Sidley Austin, Polsinelli and Jones Day provided legal advice to FelCor. ICR, LLC and Financial Profiles, Inc. are serving as communications advisors for the transaction.

**The Merger Consideration Significantly Undervalues FelCor**

62.     The Merger Consideration significantly undervalues FelCor. Based on RLJ's stock price on April 21, 2017, the last trading day before defendants announced the Proposed Transaction, the Merger Consideration represents a value of only $8.40 per share, which does not reflect the Company's intrinsic value and substantial growth prospects. Indeed, FelCor's stock price traded at $8.12 per share as early as January 26, 2017 – just three months before defendants announced the deal. Moreover, since the value of the Merger Consideration is tied to the value of RLJ's stock, and defendants failed to negotiate and secure a "collar" in favor of FelCor's shareholders, the value of the Merger Consideration can freely decrease, and, in fact, has decreased since the announcement of

the Proposed Transaction.  As of July 5, 2017, the Merger Consideration represents a value of only

***$7.20 per share*** – a sharp discount to FelCor's $7.32 per share stock price on April 21, 2017, the day

before defendants announced the Proposed Transaction.

**The Board Deterred Higher Offers for the Company and Locked Up
the Proposed Transaction with Preclusive Deal Protection Provisions**

63.    To lock up the Proposed Transaction in favor of RLJ and to deter any competing

bidders, like AHT, from making a topping bid for the Company, the Board agreed to a number of

preclusive Lockup Provisions, including a strict "no solicitation" provision that prevents the Board

from seeking more value for FelCor's shareholders, rapid information rights that require FelCor to

provide RLJ with sensitive information regarding unsolicited bidders, including the identity of the

bidder and the material terms of any unsolicited proposal, which will allow RLJ to piggy back off

the due diligence of competing bidders, as well as deal-matching rights in favor of RLJ.  The Merger

Agreement also requires FelCor to pay RLJ a termination fee and expense reimbursement in the

event that FelCor terminates the deal in order to enter in to a transaction that provides FelCor

shareholders with more value, which can potentially total $59 million.  Individually and collectively,

these deal protection provisions in the Merger Agreement serve to dissuade any topping offers for

the Company.  The deterrent effect of the Lockup Provisions was demonstrated when, on May 3,

2017, after defendants announced the Proposed Transaction, AHT was forced to publicly withdraw

its hostile bid for the Company after it determined "there is no cost-effective, actionable path

forward toward an agreement."

**Defendants Issued a Materially False and Misleading Joint Proxy
to Obtain Shareholder Approval of the Proposed Transaction**

64.    On June 2, 2017, following substantial review, editing and ultimate approval by the

Board and RLJ, defendants filed their Joint Proxy with the SEC.  The Joint Proxy omits material

information regarding the Proposed Transaction, which renders statements the Joint Proxy materially

false and misleading, in direct contravention of §§14(a) and 20(a) of the 1934 Act. Due to their joint efforts in preparing, editing, reviewing, approving and/or disseminating the Joint Proxy, defendants each knew, or were negligent in not knowing, that the Joint Proxy omitted material information and was misleading, but failed to correct such misrepresentations.

65.     First, the Joint Proxy omits material information regarding management's financial projections for FelCor, which were provided to, and relied on, by the Board's financial advisor, and which purportedly support the fairness of the Merger Consideration being offered to shareholders. Indeed, the Joint Proxy includes only a "summary" of the FelCor projections for the calendar years ending 2017 through 2021 that were provided to BofA Merrill Lynch, which discloses only projections for "Adjusted EBITDA" and "Unlevered Free Cash Flow." The Joint Proxy omits any other information that would allow an investor to understand how management arrived at their projections for Adjusted EBITDA and Unlevered Free Cash Flow.

66.     This omission is material because the summary projections in the Joint Proxy are inconsistent with prior statements regarding the Company's projected growth as a stand-alone company. On September 13, 2016, six days before AHT's first disclosed request for a meeting regarding a potential merger, FelCor made an investor presentation that revealed the Company's plan to undertake a redevelopment and repositioning project expected to yield stabilized EBITDA growth *of at least $25 to $32 million*, with potentially even more upside. This projected growth did not include any additional growth that would potentially result from other operational enhancements, such as RevPAR growth and other cost-cutting initiatives. But the "summary" projections that were disclosed project minimal growth in Adjusted EBITDA of *only $5 million* over the next five years. Thus, investors require additional information to understand how management arrived at the reduced summary projections included in the Joint Proxy, including, but certainly not limited to: (i) total hotel rooms; (ii) total revenue; (iii) property-level operating expenses; (iv) corporate-level operating

expenses; (v) depreciation and amortization; (vi) net income; (vii) funds from operations; (viii) preferred dividends; (ix) capital expenditures; (x) changes in working capital; (xi) other items used in the calculation of Unlevered Free Cash Flow, as used in BofA Merrill Lynch's Discounted Cash Flow analyses; and (xii) a reconciliation of non-GAAP and GAAP metrics.

67. Management's projections also assume asset sales during 2017, which would increase the Company's value, but the summary projections that were disclosed provide no insight into the gross values assumed from the assumed sale proceeds or the fees and debt adjustments used per property to determine net proceeds and the impact on valuation. For example, the Joint Proxy omits material information that includes, for example: (i) the specific assets assumed to be disposed of in 2017; (ii) the gross amount of each of the forecast asset dispositions; (iii) the key methodology and inputs that were used to determine these amounts; (iv) the amounts of transaction costs and debt attributable to each of the disposed assets as part of this analysis; and (v) the implied 2017 EBITDA multiples attributable to these disposition transactions.

68. The aforementioned omitted facts are material in that they directly relate to the adequacy of the Merger Consideration that investors are being offered in the Proposed Transaction, and without disclosure of the aforementioned material information, both management's projections and the valuation analyses that rely on them are intellectually inaccessible. Defendants' omission of the aforementioned material facts renders the Joint Proxy materially false and misleading, including the sections entitled "Opinion of FelCor's Financial Advisor" and "Certain FelCor Unaudited Prospective Financial Information."

69. Second, with respect to the Discounted Cash Flow Analysis conducted by BofA Merrill Lynch, the Joint Proxy fails to disclose how, if at all, BofA Merrill Lynch incorporated FelCor's valuable net operating loss carryforwards ("NOLs") in its analysis. This information is material because, as of December 31, 2016, FelCor's taxable REIT subsidiaries had approximately

*$336 million* of NOLs.  A reasonable stockholder would consider it important to know whether the financial analysis that purportedly supports the fairness of the Merger Consideration considered the value of the Company's substantial NOLs.  Defendants' omission of the aforementioned material information renders BofA Merrill Lynch's Discounted Cash Flow Analysis intellectually inaccessible and the Joint Proxy materially false and misleading, including the section entitled "Opinion of FelCor's  Financial Advisor."

70.     Third, with respect to the Net Asset Value Analyses conducted by BofA Merrill Lynch, the Joint Proxy fails to disclose any inputs or assumptions, and only discloses the concluded value range and overall implied capitalization rate mid-point.  For example, the Joint Proxy fails to disclose the individual real estate values, methodologies, and inputs used to calculate those values, as well as the resulting implied capitalization rates for each of the properties, for both FelCor and RLJ. This information is material because the Net Asset Value Analysis is one of the most important analyses conducted by BofA Merrill Lynch (as it is the critical valuation method for any REIT), yet without disclosure of the underlying key inputs and assumptions, the analysis is intellectually inaccessible.  Defendants' omission of the aforementioned material information renders the Joint Proxy materially false and misleading, including the section entitled "Opinion of FelCor's Financial Advisor."

71.     Fourth, the Joint Proxy fails to disclose the key inputs and assumptions  underlying the other valuation analyses conducted by BofA Merrill Lynch, which purportedly support the fairness of the Merger Consideration.  With respect to Selected Publicly Traded Companies Analyses, the Joint Proxy omits: (i) the individual multiples for each of the selected public companies observed and analyzed by BofA Merrill Lynch for both FelCor and RLJ, including but not limited to EV/ 2017 EBITDA; and (ii) whether BofA Merrill Lynch performed any type of benchmarking analysis for both FelCor and RLJ in relation to their respective sets of selected public

companies.  With respect to Selected Precedent Transactions Analyses, the Joint Proxy omits the individual multiples for each of the selected transactions observed and analyzed by BofA Merrill Lynch for both FelCor and RLJ, including but not limited to EV/ one-year forward EBITDA.  With respect to the Discounted Cash Flow Analyses, the Joint Proxy omits: (i) the specific definition of "unlevered after-tax free cash flow" for both FelCor and RLJ; (ii) the individual inputs and assumptions utilized to derive the discount rate ranges of 9.0% to 10.0% for FelCor and 8.5% to 9.5% for RLJ; (iii) the implied perpetuity growth rate ranges for each of FelCor and RLJ resulting from these analyses; (iv) how, if at all, FelCor's NOLs were considered in this analysis, *supra*; and (v) the actual amount of "estimated forward EBITDA in the terminal year" used to calculate the terminal value for both FelCor and RLJ.  Defendants' omission of the aforementioned material information renders the Joint Proxy materially false and misleading, including the section entitled "Opinion of FelCor's  Financial Advisor."

72.     If disclosed, the aforementioned material information defendants omitted from the Joint Proxy would significantly alter the total mix of information available to investors.

## CLASS ACTION ALLEGATIONS

73.     Plaintiff brings this action individually and as a class action on behalf of the Class. Excluded from the Class are defendants herein and any person, firm, trust, corporation or other entity related to or affiliated with any defendants.

74.     This action is properly maintainable as a class action under Rule 23 of the Federal Rules of Civil Procedure.

75.     ***Numerosity***. The Class is so numerous that joinder of all members is impracticable. According to FelCor's most recent Form 10-Q filed with the SEC on May 9, 2017, there were over 138 million shares of FelCor common stock outstanding as of May 3, 2017.  Those shares are likely held by hundreds, if not thousands, of persons.

76.     ***Commonality***.   There are questions of law and fact common to the Class that predominate over questions affecting any individual Class member.  The common questions include, but are not limited to, the following:

(a)     whether defendants violated §§14(a) and 20(a) of the 1934 Act and SEC Rule 14a-9 by preparing, reviewing and disseminating a false and misleading Joint Proxy; and

(b)     whether plaintiff and the members of the Class have been damaged as a result of defendants' conduct described herein.

77.     ***Typicality***.  Plaintiff's claims are typical of the claims of the other members of the Class, and plaintiff does not have any interests adverse to the Class.

78.     ***Adequacy of Representation***.  Plaintiff is an adequate representative of the Class, has retained competent counsel experienced in litigation of this nature, and will fairly and adequately protect the interests of the Class.

79.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the parties opposing the Class.

80.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and plaintiff anticipates there will be no difficulty in the management of this litigation.

81.     Defendants have acted on grounds generally applicable to the Class with respect to the matters complained of herein, thereby making appropriate the relief sought herein with respect to the Class as a whole.

## COUNT I

### Violations of §14(a) of the 1934 Act and SEC Rule 14a-9
### Against All Defendants

82.     Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

83.     Defendants, jointly and individually, disseminated the false and materially misleading Joint Proxy, which fails to disclose material facts necessary to make other statements made in the Joint Proxy, in light of the circumstances under which they were made, not misleading.

84.     The omissions and false and misleading statements in the Joint Proxy were material in that a reasonable shareholder would consider them important in deciding how to vote on the Proposed Transaction.  In addition, a reasonable investor would view full and accurate disclosure of the material information alleged herein to have been omitted as significantly altering the total mix of information available to investors.

85.     The Joint Proxy was jointly prepared, reviewed and disseminated by FelCor, the Board and RLJ.  Defendants therefore knew or should have known, and/or were negligent in not knowing, that the Joint Proxy misrepresented and/or omitted the material information alleged herein, which rendered other statements made in the Joint Proxy false and/or misleading.

86.     By reason of the foregoing, defendants violated §14(a) of the 1934 Act and SEC Rule 14a-9(a) promulgated thereunder.

87.     As a result of the materially false and misleading Joint Proxy, plaintiff and the other Class members are being threatened with irreparable harm.

## COUNT II

### Violations of §20(a) of the 1934 Act
### Against the Individual Defendants and RLJ

88.     Plaintiff incorporates by reference and realleges each and every allegation above as though fully set forth herein.

89.     The Individual Defendants and RLJ acted as controlling persons of FelCor within the meaning of §20(a) of the 1934 Act, as alleged herein.  By virtue of their positions as officers and/or directors of the Company, participation in and/or awareness of the Company's operations, and/or intimate knowledge of the materially false and misleading statements contained in the Joint Proxy, they had the power to influence and control, and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the false and misleading statements in the Proxy.

90.     Each of the Individual Defendants and RLJ were provided with or had unlimited access to copies of the Joint Proxy and the other statements alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued, and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

91.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, each is presumed to have had the power to control or influence the particular transactions giving rise to the violations of the 1934 Act alleged herein, and exercised the same. The Joint Proxy contained the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction.  They were, thus, directly involved in the creation and dissemination of the Joint Proxy.

92.     In addition, as the Joint Proxy sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing and/or approving the Proposed Transaction.  The Joint Proxy purports to describe the various issues and information they reviewed and considered, descriptions of which had input from the Board.

93.     As set forth above, the Individual Defendants and RLJ had the ability to exercise control over, and did control, a person or persons who each violated §14(a) of the 1934 Act and SEC

Rule 14a-9 promulgated thereunder, by their acts and omissions in connection with the false and materially misleading Joint Proxy.

94.     By reason of the foregoing, the Individual Defendants and RLJ violated §20(a) of the 1934 Act.  The Individual Defendants' and RLJ's violations of §20(a) threaten plaintiff and the other Class members with irreparable harm.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff demands judgment in plaintiff's favor and in favor of the Class and against defendants as follows:

A.     Determining that this action is a proper class action, designating plaintiff as Lead Plaintiff and certifying plaintiff as a class representative under Rule 23 of the Federal Rules of Civil Procedure and plaintiff's counsel as Lead Counsel;

B.     Declaring that the Joint Proxy distributed to FelCor's shareholders is materially false and misleading in violation of §14(a) of the 1934 Act and Rule 14a-9;

C.     Enjoining defendants from holding the shareholder vote or consummating the Proposed Transaction unless and until defendants fully disclose all material information regarding the Proposed Transaction;

D.     Awarding plaintiff and the Class members compensatory and/or rescissory damages against defendants;

E.     Awarding plaintiff and the Class members pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs;

F.     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity, and the federal statutory provisions sued hereunder; and

G.     Awarding such other relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff and the Class demand a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure.

DATED:  July 17, 2017                        Respectfully submitted,


                                             /s/ Willie C. Briscoe
                                    ————————————————————
                                             WILLIE C. BRISCOE
                                    WILLIE C. BRISCOE
                                    State Bar No. 24001788
                                    THE BRISCOE LAW FIRM, PLLC
                                    3131 McKinney Avenue, Suite 600
                                    Dallas, TX  75204
                                    Telephone:  214/643-6011
                                    281/254-7789 (fax)
                                    wbriscoe@thebriscoelawfirm.com

                                    ROBBINS GELLER RUDMAN
                                      & DOWD LLP
                                    STUART A. DAVIDSON
                                    CHRISTOPHER GOLD
                                    120 East Palmetto Park Road, Suite 500
                                    Boca Raton, FL  33432
                                    Telephone:  561/750-3000
                                    561/750-3364 (fax)

                                    ROBBINS GELLER RUDMAN
                                      & DOWD LLP
                                    DAVID T. WISSBROECKER
                                    TIMOTHY Z. LACOMB
                                    655 West Broadway, Suite 1900
                                    San Diego, CA  92101-3301
                                    Telephone:  619/231-1058
                                    619/231-7423 (fax)

                                    Attorneys for Plaintiff and the Proposed Class

I:\Admin\CptDraft\Deal\Cpt FelCor ND Tex.docx